Good morning, everyone. We have, I think, a full calendar this morning, so we'll dispense with the actual reading of the calendar, and let's move straight to our first case. You may call the case, Ms. McKee. First case for argument on Tuesday, October 22nd, 2024, case number 23-3772, 3M Company v. Commissioner of Internal Revenue. All right, counsel, you may proceed when you're ready. Thank you, and good morning, Your Honor. May it please the Court. Jonathan Bond for Appellant 3M. The IRS attributed as income to 3M $23 million in royalty payments that were never made because they were undisputedly barred by law. The only basis the IRS gave in its notice of deficiency for that allocation, at Appendix Page 106, is the blocked income regulation. And for a decade of litigation, that was the IRS's only defense, and the only ground the tax court plurality gave for upholding the deficiency. The tax court's ruling should therefore be reversed because the blocked income regulation is both substantively unlawful under First Security and procedurally invalid under the APA. And the Supreme Court's most recent decisions in Loper-Bright and Ohio v. EPA confirm the plurality's errors. Indeed, on appeal, the IRS has pivoted away from the blocked income rule to a shifting array of fallback arguments. To the extent this Court considers any of those arguments, it should reject them. But either way, this Court should bring this dispute to a close. After more than a decade of litigation, 3M is entitled to a definitive judicial determination that it should not be required to pay millions of dollars of additional taxes simply because it followed the law. Now, if I can start with the statutory issue under First Security, I think it's apparent from the Supreme Court's decision that it was interpreting the statutory provision at Issue 482, and you can see that clearly at pages 403 and 405 of the Court's opinion, where it interprets the term income in the Internal Revenue Code and returns later to say the statute does not authorize what the agency is doing. As the Fifth and Sixth Circuits recognized when they confronted this same issue, also without a regulation in effect, which is the same posture we're in now with respect to Loper-Bright, absent any deference, First Security's holding squarely disposes of the blocked income question here by providing that the IRS cannot treat legally prohibited payments as income to a taxpayer. Don't we, counsel, don't we still not owe a deference the regulation, but the Supreme Court in the Loper-Bright decision did mention that it's almost like Skidmore deference. To the extent we find the regulation persuasive, we could certainly choose to follow the regulation as an interpretation of the statute. You can choose to follow the regulation only insofar as it reflects the best interpretation of the statute and if it sheds light to the Court on what the best interpretation is. I don't think you can reach that conclusion as to this regulation. Number one, it was in the teeth of a binding Supreme Court determination of what this statute means. Number two, the regulation doesn't parse the statutory text. Nothing in the preamble or the final rule tells you what the ordinary meaning of income is or tells you why you should read Section 482 to authorize allocation of income that by law can't be paid. Well, and that brings up an interesting point. So the first thing you said, one of the things I was wondering about is the Supreme Court really didn't mention Brand X in Loper-Bright. And Brand X suggests that an administrator, I don't know if it's reconcilable with Loper-Bright or not. Maybe it isn't. But it seems to suggest that even a definitive interpretation can be overruled, so to speak, or given deference over or that a regulation can be given deference over a prior judicial determination. Brand X certainly did articulate a rule that agencies could depart from precedent. Now, this Court sitting on Bonk and Micklin recognized limits on how far Brand X stretched while it was in force. But I don't think there's any question after Loper-Bright that Brand X has fallen away with Chevron. It was at most a corollary of Chevron and, you know, probably more candidly, an extension of Chevron. But either way, it has disappeared. And I think that's clear from the many places in the Loper-Bright opinion where the Supreme Court kind of points to Brand X as a symptom of the problem that Chevron represented, that Chevron had allowed agencies to overturn judicial determinations of what statutes mean. And that was a red flag that Chevron had gone too far. So I think Brand X is out of the picture. And that was the linchpin of the tax court plurality's ruling on the statute. The only ground it gave for 32 pages of its opinion at addendum 231 to 63, the tax court plurality says Brand X is the answer here. We have to follow the blocked income regulation because of Brand X and Chevron. Now, of course, all of that's academic in light of Loper-Bright because the agency's determination no longer ties the Court's hand. And very importantly, that Loper-Bright does not mean you're now writing on a blank slate and looking at how to read the statute de novo because the Supreme Court has already answered that question. As I said earlier, I think the posture now in this case is really the same as the Fifth and Sixth Circuits in Texaco and Procter and Gamble confronted. So to adopt the agency's position here, you'd have to create a direct circuit conflict and you'd have to explain why First Security doesn't speak directly to this question. And I don't think the IRS has offered any explanation on that issue. And recently, in Moore, the Supreme Court has given sort of a different gloss on the underlying assumption has always been that in order to be taxed, the taxpayer has to have complete control. And I understand that's from the regulation, but it is part of the First Security's analysis. That doesn't seem to fit very nicely or cleanly in with the Moore case, which admittedly is in a different context. But still, this idea of the complete control sort of falls away in Moore. With respect, I don't think it falls away. If I can just say a few things about Moore. Now, to be very clear, Moore did not address any statutory issue, much less 482. It certainly didn't address the APA issues that are at issue here. So Moore doesn't provide a reason to affirm the tax court. On the issue that Moore addressed, I don't think that Moore adopted any comprehensive definition of income. I think you know that because in footnote 7, the Court rejected as entirely incorrect the notion that its interpretation of the TCGA provision regarding the mandatory repatriation tax would immediately expand the definition of income throughout the Internal Revenue Code. The Court went out of its way to reject it. But does it call into question this, the idea of, accepting all of the distinctions that you've pointed out, does it call into question this idea of complete control, which does seem to be a driving force of First Security? I don't think so. I think what Moore recognized, and its narrow, specific holding, as it emphasized, was that Congress has constitutional authority to treat a business entity either as an independent taxpayer for tax purposes or as a pass-through, and to attribute its income, even if undistributed, to its owners. We don't quibble with that basic proposition. And I don't think Section 482 is inconsistent with that. The whole point of 482 is to attribute income. But I don't think Moore speaks to the question of whether there's a, or when there's a legal barrier preventing the payments from being made. There was no legal barrier in Moore. That wasn't the issue the Supreme Court was addressing. The limitation on distribution came from the way the controlled foreign corporation was organized. You know, the way that they had structured their affairs meant that a minority owner couldn't direct that the company would pay a dividend. That kind of voluntary limitation on your income is not inconsistent with complete control. I'd point you to the Supreme Court's decision in Bays, the term after First Security, which cites First Security and explains its holding, and explains that what's going on there is different from a legal restriction. It's the way the parties have orchestrated their affairs with some built-in limitations on when they can access the money. That's very different than a legal restriction. So is that the distinction, like for you, if this were some, I can't think of a hypothetical off the top of my head, but is that a pivotal distinction for you, the voluntary nature of how this is set up versus the mandatory legal restriction that Brazil, in this case, puts on the income? Yeah. On the statutory issue, absolutely. I think the fact that there's an external legal impediment means that the taxpayer does not have complete dominion over the income. That's First Security's point about the meaning of income. And also, First Security's second rationale, which is the exercise of common control isn't what's driving this transaction or preventing the money from being paid. Those are kind of two sides of the same coin in First Security, but one's about the statutory term income, and the other is about the design of the statute, as the Court puts it at page 400, that the design is to prevent arbitrary shifting. And when the Court turns to the IRS's regulation to say it's consistent with what the Supreme Court is interpreting the statute to do, it says there's not an exercise of common control when the law is interfering because the common controlling interest can't direct its subsidiary to violate the law. And that's the same circumstance you have here, just as the Fifth and Sixth Circuits had when they confronted this question. Can I ask you about constitutional avoidance? Judge Kelly asked about Moore, and I wonder whether there's another interpretation of Moore. If you look at what some of the justices suggested, four of them, in fact, suggested that there's a constitutional problem with taxing unrealized income. And I wonder if that goes double for taxing blocked income. Now, I realize it's only four members of the Court, but to apply constitutional avoidance, you don't necessarily need a definitive unconstitutionality ruling. And so I'm just wondering if Moore supports your argument to some extent as well. So we agree that constitutional avoidance on that question of blocked income does support our argument. We made that argument in our opening and reply briefs, and we don't think Moore, the Court anyway, answered that question. So that constitutional question is still out there and still gives you yet more reason to adhere to First Security, which avoids that constitutional question. So if you stick with First Security, you never reach that constitutional issue. Whereas if instead you say, actually, 482 now either compels or authorizes the IRS to allocate blocked income, then you'd confront that question, which I don't think the Supreme Court in Moore and Alcander answered, but I don't think it foreclosed that constitutional argument either. So I think that question is still out there and is yet more reason to read the statute by its terms, not as — and as First Security construed it, not to permit the IRS to allocate blocked income. And I think — so the plurality's only reason for declining to apply for a security with Chevron and Brandeis, with those things out of the picture, I think the statutory question is now clear. So it's not an instance where the tax court now needs to reconsider the issue. It's now the only impediment to applying for a security has been removed by the Supreme Court. If I could turn, then, to the APA issues, it's a similar state of affairs insofar as we think the law already foreclosed the tax court plurality's ruling, but the Supreme Court has just made that even clearer. Ohio rejects, I think, two or three critical propositions that underlie the tax court plurality's ruling. One is that the tax court plurality believed that a court can put together an explanation for a rule, kind of fishing throughout the Federal Register and piecing together other provisions of the rule to reconstruct a rationale. And I think it's pretty clear from Ohio, and that's the rule going back to Chenery, that reviewing courts can't do that. And that's a rule that actually respects the agency's prerogatives and ensures that judicial review is of the agency's determinations, not of the court's own creations or of the agency's litigating position. But here, the comments, as I understand it, that your client believes should have been responded to dealt with the issue we've just been discussing, correct? The first security That was part of what the comments addressed, but not all of it, to be very clear. Well, at least as to those, which is, it's a legal question, right? That's what we're here for. And I'm curious, what role Loper-Bright plays in that? If it's truly a legal question, what good, I guess, is it for the agency to explain its legal position when Loper-Bright now says, well, under Chevron, we just aren't giving you any deference? Well, I have three things to say about that, one doctrinal, one practical, and one point about this case. The doctrinal point is there has never been an exception for legal issues from the reasoned explanation requirement. We cite a number of cases that applied it in that context. The IRS offers you none. And I think that makes sense because as the Sixth Circuit explained in Mann Construction, if you're going to have an exemption from the APA, it's got to come from Congress, and it has to be clear because the APA says in 559 that there has to be an express statement from Congress carving something out. But those are all pre-Loper-Bright. That was Chevron, in the Chevron world, those cases. We're dealing with APA issues, not Chevron issues. This is, you know, the agency of— Right. But it was in the world when we still had deference is what— Sure. And I think Loper-Bright definitely itself does not create an exception from the APA for legal issues. I think that would turn Loper-Bright upside down. Recall that the central rationale of Loper-Bright is that the APA needs to be enforced faithfully. And to do that, we're going to get rid of deference. I think it would turn Loper-Bright completely on its head to say that now out of respect for the APA, we're going to create a carve-out to the APA for legal issues, which are not ancillary but are often of paramount importance to what the agency is doing. And I think Mann Construction is helpful on this point because it rejected a request by the IRS for another notice and comment carve-out for a different set of issues. The practical answer is that the agency's statement of its legal position is actually critically important. I think in cases like CSI Aviation from the D.C. Circuit, I think it's clear that when the agency doesn't explain what it's doing, a reviewing court can't fulfill its function of measuring the agency's work up against the statute. As the D.C. Circuit put it there, in that circumstance, a court has no choice but to declare the agency's work arbitrary and capricious. So if, in fact, we were to get to this question and determine that we agreed with you, what would be the remedy? The remedy in this deficiency posture is very simple. You would direct the tax court to redetermine the deficiency in this case. I'm sorry. For the rule. We said that the agency did not respond in terms of the notice and comment rulemaking process as to the rule. The rule is not vacated regardless of what you do in this case. This is not an APA suit. Congress has foreclosed those under the Anti-Injunction Act. This is not a case in which the rule would become immediately inoperative everywhere as a result of your ruling. Your legal rationale would be, if you adopted this argument, that the rule is invalid and in this circuit the IRS couldn't rely on it in future proceedings, but the rule itself would remain on the books inoperative and the IRS and other circuits could continue to apply it. So that's one very important difference about tax litigation compared to other areas. And I think that also explains why, you know, we're 30 years on and the issue of the procedural validity of this rule is just coming up because that's the system that Congress designed. Is there, I'm sorry to interrupt, but is there an alternative remedy other than invalidating the regulation for this circuit? There is not an alternative to saying that the regulation is invalid and can't support this deficiency. So there's no opportunity for a remand to the agency? There's no opportunity for any kind of a redo? That's correct. So if you were in an APA case where someone brought a district court challenge or a direct to circuit challenge seeking review of the agency rule, you'd have that allied signal, you know, remand with ad vocator option available. But here the rule itself is not the unit of analysis. It's not the thing before you. What's in front of you is the redetermination of a specific taxpayer's deficiency as determined by the IRS that the tax court is supposed to review de novo. So the only question before you is, is 3M entitled to a redetermination? So it's just like man construction. In a refund suit posture where the court said you're entitled to your refund and when the taxpayer sought additional relief, the court concluded that that was moved. If I may, I would reserve the remainder of my time for rebuttal. You may. Thank you very much. You may proceed when you're ready. Thank you. May it please the court, I'm Francesca Ugolini, counsel for the Commissioner of Internal Revenue. The allocation in this case is mandated by the second sentence of section 482 which states that in the case of any transfer or license of intangible property, the income with respect to such transfer or license shall be commensurate with the income attributable to the intangible. There is no dispute that this case involves a transfer of intangible property. There is no dispute that the income from those intangibles paid to 3M was not commensurate with the income that 3M Brazil earned from using the intangibles. And there is also no dispute that the IRS's allocation of $23 million is an appropriate amount. You know, I read the statute differently. And I just want to ask you, this reads to me, and grammatically so, that the second sentence is a clarification of the first. So you have to read the statute as a whole which is a basic canon. And it seems to me that the only reading I can see is that the first sets the conditions which is the blocked income limitation. And then the second says, if it's not blocked, then this is how you value the intangibles. Why is that reading incorrect? I mean, I can't find a grammatical hook for the IRS's reading. Even if, so Your Honor's question assumes that the first sentence of 482 bakes in that blocked income rule. But when you look at the Supreme Court's decision in First Security, the court said, this is about two-thirds of the way through its opinion, apart from the inequity of attributing to banks taxable income that they have not received and may not lawfully receive, neither the statute nor our prior decisions require such a result. But when Congress amended the statute 14 years later, they did set a new standard for what income must be in the context of intangibles. The court recognized that Congress could alter the statute to change the rule, and that is what it did in the second sentence. Where's the grammatical hook, though? I just do not see a grammatical hook for your interpretation. It says, income with respect to such transfer shall be commensurate with the income attributable to the intangible. But the word such is a reference back to the first sentence. Such transfers. I think such is a reference back to the first clause of the second sentence, which says, in the case of any transfer or license of intangible property, the income with respect to such transfer. So the transfer mentioned in the first clause of the second sentence. So for intangibles, the IRS is reading as if the first sentence really just doesn't matter. The first sentence is what authorizes the commissioner in the first place to make any sort of adjustment when the commissioner believes it's necessary to clearly reflect income. But that first sentence does not ultimately define the outer bounds of what income is. And in fact, even in first security, I don't think the Supreme Court was purporting to interpret the term income in 482. The term income is defined in section 61 of the code. And the Supreme Court was making observations about its own case law, which had interpreted section 61, not section 482. And then as the court recognized in the sentence that I read here, which is at 405 U.S. at 405, it says the statute doesn't require any particularly different result. That's as of 1972. But 14 years later, Congress amended the statute precisely to solve the problem of inadequate allocations relating to transfers of intangible property. Congress not, it didn't just use the word income. It actually created a new standard for determining what income shall be. The statute says the income with respect to the transfer of intangibles shall be commensurate with the income attributable to the intangibles. And you don't think that's a measurement? I mean, that's the problem I'm having. Commensurate income attributable, those all sound like measurements that again refer back to the first sentence. That, you know, the main rules in the first sentence, and then there's a valuation of a specific. Because intangibles are not easy to figure out what the value of them are. It's not easy at all. Or at least in some cases, it's not easy at all. And so it seems to me like that's just providing more guidance on how to do this income transfer that the IRS is wanting to do with respect to intangibles. To a certain extent it is, but it's not limited to questions of valuation. In fact, I know my friend on the other side has argued in his brief that that section is limited to a question about valuation of intangibles. But then I would point, Your Honor, to the third sentence of Section 482, which was added even later in 2017, which explicitly addresses valuation of intangibles. And that, the third sentence of 482, uses the word valuation three times. The second sentence doesn't use the word value at all. It creates a new standard for determining income. And it says income shall be commensurate with the income attributable to the intangible. That means you need to look at the controlled group member that received the intangible, what income did they earn that was attributable to the intangible. And that sentence has no exception for blocked income. The Supreme Court in First Security recognized that Congress could alter the outcome of that case. Congress could legislate otherwise. And in the second sentence of 482, it did legislate otherwise for a specific type of transaction. It is a well-established canon of statutory construction that a specific provision governs over a general, and a general statute will not be read to limit a specific statute unless the intention to do so is clear. What about the first sentence on that the purpose of the reallocation is to prevent evasion of taxes or to reflect the income of such organizations? You said that the first sentence still is in play here. I don't see how reallocating blocked income prevents the evasion of taxes because 3M simply couldn't have gotten the income. I mean, they couldn't have under Brazilian law. Well, we dispute that the income in this case was blocked because 3M could cause 3M Brazil to pay dividends. That was perfectly... Come on. That, I mean, dividends, if they would have paid dividends, right, then the IRS could have, in exactly that amount, the IRS could have come back and said, hey, that's great as for the dividends, but you still haven't valued the intangibles, right? So in other words, they may have paid dividends, they could pay dividends, but the IRS was certainly free to come back and say, but you didn't value the intangibles, right? Well, when you look at the first security case, the point about the blocked income related to fairness. In fact, the sentence that I just read, the Supreme Court said, apart from the inequity of attributing this income to the banks, because it was a sister company. A sister company cannot force another sister company to pay anything to it. Later in that same paragraph, the court said, we think fairness requires the tax to fall on the party that actually receives the income. In this case, the question of royalties versus dividends is just a question of form over substance. 3M had full control over 3M Brazil's earnings and profits. It is stipulated in this case that there was no legal restriction on paying dividends and also another type of payment called interest on equity from 3M Brazil to 3M. And in fact, in the tax year at issue, 3M Brazil paid 65 million in dividends to 3M. And actually, on the U.S. tax law side, the IRS, there was a mechanism in which 3M could have chosen to recharacterize some amount of that dividends as royalties to meet the commensurate with income standard. And 3M just chose not to do that. When they have been violating Brazilian law, if they did that? Absolutely not. It is perfectly legal under Brazilian law for 3M Brazil to pay dividends to 3M. Oh, the recharacterizing of royalties. No. I think the Brazilian legal authority has no interest in what the U.S. taxing authority allows in terms of recharacterizing a legal payment. It's legal under Brazilian tax, under Brazilian law. And I think the reason that the Brazilian legal authorities would not care about a recharacterization is the limit on royalties was about protecting Brazil's own tax base. So the limitation was that a Brazilian subsidiary can only pay royalties to the extent those royalties are tax deductible. And this is about Brazil protecting its tax base. But dividends are paid with after-tax dollars. So from a Brazilian legal standpoint, if a subsidiary is paying dividends to a foreign parent with after-tax dollars, then there's no reason for that legal authority to care what the U.S. taxing authority is calling those payments for U.S. tax purposes. So I just want to be clear on this. If they would have paid dividends, there would have been no—and I would have probably counseled my client not to do that, knowing what I know now about the case and the code. The IRS would not have come in and said, no, those are dividends. You paid dividends. You still have to account for the royalties. There was a mechanism—there is a mechanism under a revenue procedure, 99-33, which we've cited in our brief, that allows the taxpayer to choose to recharacterize a portion of its dividends as royalties. And in fact, in the Coca-Cola case that we cited in our brief, that's a tax court case that's now pending on appeal with the Eleventh Circuit, the Coca-Cola company actually did pay 900—it had a Brazilian subsidiary that paid $900 million in dividends to its U.S. parent specifically, explicitly in lieu of royalties. And there's no suggestion in that case by the commissioner, the Coca-Cola company, or the tax court that that somehow subverted Brazilian law. That was—that was an option that 3M had available to it, but it just chose not to use that for this tax year. My friend also mentioned—has relied heavily on waiver principles to ask this court not to reach this statutory argument, but the waiver standards that 3M is citing in this case apply to the appellant, not to the appellee. The tax court proceeding was de novo. The IRS and the tax court were not limited to sustaining the allocation solely based on the grounds stated in the Notice of Deficiency, and the Notice of Deficiency in any event did cite the statute. In the tax court, the plurality, the concurrence, and the dissent addressed our statutory argument, and I'd be happy to give this court those cites, but they're also in our supplemental brief. And actually, one of 3M's amici addressed this statutory argument as well, the Silicon Valley group, in its amicus brief. So this statutory issue, which we submit, resolves this case completely, is not waived in this case. I agree with you that it's not waived, but just so I understand the argument correctly, I think that only the three concurring justices—I think there are three concurring judges, excuse me—were the ones that agreed that the—my understanding of the tax court opinion is that the plurality went off on sort of a Brandax, Loper, Bright. Is that your understanding as well? The tax court—the plurality did primarily go with a Brandax Chevron-type analysis, but if you—when it was analyzing Chevron Step 1, it actually addressed these arguments related to the commensurate with income provision, and in fact responded to many of the arguments made by 3M in this appeal. The tax court addressed those in its Chevron Step 1 analysis. And so those are pages 244 to 251 of the plurality opinion. The concurring opinion addressed this, and two of the dissent by Judge Toro and the dissent by Judge Book also addressed the commensurate with income argument. So I think it's certainly fair game in this—in this appeal. Counsel, which issue should we address first? Do we—do we look at the APA argument? And is there a—is there a finding on that issue which eliminates the need to go to the statutory, the substantive argument? Well, we would submit that the court should address the statutory argument first. That's our primary argument in this appeal. And in our view, if the statute does resolve the question, then the court would—we think that's the sort of best way to go. I mean, statute first and looking at the regulations second. What about the—what about the APA claim? Sure. As we've argued in our brief, we think the tax court was correct in finding that the regulation here satisfied the APA standard. I'd like—quoting from Judge Kavanaugh, this is from the American Radio case in 2008 when he was a judge on the D.C. Circuit, his concurring opinion. He said, State farm does not require a word count. A short explanation can be a reasoned explanation. And I would also point this court to the Thompson v. Clark opinion written by Judge Scalia when he was also on the D.C. Circuit, and the tax court here relied heavily on that decision. That—in that case, the D.C. Circuit upheld a rulemaking that had a few sentences of explanation and no response to over 1,800 comments. In this case, the Treasury Department, the explanation for this particular part of the regulation was indeed short. It was part of a massive regulatory overhaul of all of the regulations under Section 482. And 17 pages of the Federal Register include an explanation of those provisions in response to what Treasury at the time viewed as significant comments, which primarily related to various transfer pricing methodologies and issues that just are not present in this case. Look, I think that—I think that the agency, when they're dealing with it, can give short explanations, but I view the explanation here as a how, not a why. Like, how do we apply this particular new regulation? What I don't see is why the regulation was enacted and has the language that it did. Can you point me to any language in the explanation that's a why? Why the IRS did what it did? The—I think the how and the why are combined, and I agree with you. The preamble is not explicit in saying we are issuing this regulation because. It doesn't use sort of those terms that signal an explicit explanation of why. But I think the rationale still can be discerned from the how. The regulation—the discussion in the preamble explains that a foreign legal restriction will be taken into account only to the extent that it would affect uncontrolled taxpayers under comparable circumstances. That is an explicit application of the arm's length principle. Elsewhere in the preamble of the regulation, Treasury discusses at length the arm's length principle, and that has been the guiding principle under Section 482 for decades, as recognized by this Court. The preamble also talks about the tax parity purpose of Section 482, and that was addressed by the Supreme Court in First Security, that one of the primary reasons for underlying 482 is that taxpayers should be treated consistently with uncontrolled taxpayers. So even though the regulation—or the preamble's discussion is not explicit in saying this is why we are adopting this rule, it is embedded in there in a way that this Court and the tax court could reasonably discern the explanation. And that is all the APA requires. This regulation was issued in 1994. I mean, it was certainly a different time in terms of what the Treasury Department's understanding was of its responsibility to comply with the APA. Certainly this—and as 3M has pointed out, Treasury incorrectly concluded that this was interpretive regulation. So at the time, it didn't even think that it had to put the regulation through notice and comment, but it actually did do that. It afforded the public more rights than it thought were—that it needed to provide at the time. The explanation in this case, yes, was short compared to what you might see from the Treasury Department now, but the reason for the regulation can be reasonably discerned from the preamble, which is all that the APA requires. Counsel, back to my line of questioning a moment ago. Let's say we conclude that there was not adequate explanation for adopting the rule or inadequate reasoning for abandoning the prior rule was provided or the responses to comments were inadequate. What happens to the rule itself? Is it then not enforceable? I don't understand counsel to say that that's not really the case. I do agree with my friend on the other side that because this is a tax deficiency case, it is not an APA case. The remedy—this case does not present an option to remand the regulation to the agency to redo the rulemaking or provide more explanation. The result in this case would be that the court could set aside the regulation under the APA, which we believe means you just don't apply it in determining the outcome in this case. All right, and what would the effect of that be? Well, the effect for 3M—I mean, if this court were to also reject our statutory argument, which we submit as a completely separate alternative basis for sustaining the tax court, that would mean 3M wins this particular case and that the regulation, the Treasury— IRS would not be able to apply this regulation to other taxpayers within the Eighth Circuit's jurisdiction. Okay, so this narrows it down. What if we just stop? What if we say the APA was not complied with, this regulation as to 3M is not enforceable? Does that conclude the case? That would conclude the case. I mean, of course, as I mentioned, you know, we've got our primary alternative argument based on the statute. This disputed tax liability would then be set aside or would not be enforceable against 3M? That's correct. All right, so why wouldn't we look at the APA argument first? You said a moment ago that we should look at the substantive claim. Why wouldn't we look at the APA argument first because government might lose there and it would remain for another day, perhaps for another court, to look at the substantive argument? If you did look at the regulation first, though, I think you still would have to consider our statutory argument because those are two alternative bases for sustaining the adjustment in this case. In our view, even if this court did set aside the regulation and determine that it's invalid, we would still maintain that the allocation was appropriate here under the statute itself in the absence of the regulation. On the set aside question, and this gets to universal injunctions a little bit, if we set aside in the normal, my experience, and we don't get as many of these cases as the D.C. Circuit does, but in my experience when we set aside a regulation, which I've done at least once before and I've seen cases doing it, the agency seems to treat it as a nationwide setting aside of the regulation. Is there something about tax that makes that different? Well, I know the Department's current position is that set aside in the APA does not refer to a universal vacature, and I know that's an issue that the Department is litigating in other contexts, and that's an argument that's been raised in the Supreme Court. In the tax context, though, tax is sort of unique. Tax cases, tax deficiency cases in particular, do not fall under the APA. There is a separate comprehensive statutory scheme in the Internal Revenue Code for adjudicating tax deficiency cases. So in our view, when courts reach APA questions within the context of a tax case, really what it means is it's saying we're just not going to apply this regulation. It's more akin, I think, to an APA enforcement action, where the particular agency rule is just not applied to the individual that's contesting the agency action. But you did mention, at least according to the Department, it would not be enforced against any Eighth Circuit taxpayers. That's correct. Okay. I see I've run out of my time. If the Court has any further questions? All right. Thank you. You may stand aside. Counsel, you have just under four minutes. Thank you, Your Honor. Three points. One about the second sentence on commensurate with income, one about dividends, and one about the APA. On the second sentence about commensurate with income, if the Court reaches the issue, that sentence just does not speak to the issues here and certainly did not override First Security. Judge Strass, I think you're exactly right that it's conditioned by the first sentence. It clarifies how the 482 analysis is supposed to work for intangibles. It didn't address blocked income or restrictions. It doesn't redefine income but takes that term as it finds it. And it would be passing strange to interpret that provision as addressing blocked income. And I think, in particular, it can't explain the blocked income rule, which is limited to foreign transactions, not limited to intangibles, and makes exceptions that the IRS says are not present in the statute. What's really going on in the second sentence is Congress was addressing a fundamentally different issue, the notoriously difficult problem of measuring income from intangibles when you don't have a comparable transaction. That's what Congress was doing, and I think that's what this sentence addresses. And that explains why you don't see anything in the text about the blocked income problem. Second, at a minimum, it doesn't override First Security. The Supreme Court has been emphatic that when it has interpreted a statute, we don't lightly treat Congress as having obliquely or implicitly overtaken it. That's the Forest Grove case. To the contrary, if Congress amends a statute but leaves intact the part the Supreme Court has interpreted, we take that as ratification. That's footnote 11 of Forest Grove. And just stepping back, why would Congress override First Security only with respect to intangibles but leave it applicable in all other contexts? That's something that just doesn't make sense to me. And I think, you know, finally, on the commensurate with income point, the agency's words and deeds are quite probative here. Other parts of the 1994 regulation spoke directly to this, principally 1.482-4. That's not the blocked income rule. Again, in the deficiency notice here never mentions commensurate with income, and the IRS's position for 10 years in the tax court, this is page 88 of its opening brief, was that the statute, in the second sentence in particular, is silent and nowhere in their own words addresses the blocked income question. Second, on dividends, it's undisputed that 3M Brazil can't pay the funds that are at issue, which are royalty payments for intellectual property. The IRS is saying you should have issued dividends in the same amount to pay for the same intellectual property rights and simply told Brazil their dividends and told the IRS that they are royalties. The Sixth Circuit flatly rejected this argument in Procter & Gamble, and I think they were exactly right. As they pointed out and as the Supreme Court pointed out in footnote 4 of First Security itself, there is no obligation on a taxpayer to maximize its taxable income and structured affairs in that way. The revenue procedure that my friend mentioned simply provides a mechanism for a taxpayer voluntarily to do that, on the front end or on the back end after the IRS has made a valid 482 allocation. It's just the IRS saying we have a form for that, not that there is any law obligating you to do that. Could they have still come out? I mean, the thing that concerns me, could they still have come after 3M had you done that? I agree that it seems voluntary, but could they have said, no, those are dividends, you called them dividends, or is that revenue procedure pretty definitive? If you go through the revenue procedure, then the IRS can't reclassify, but the IRS can't treat dividends that we paid as royalties today. I don't think they dispute that. But also, I mean, it does speak to 3M's control over its subsidiary, right, that it has that ability to do that. So this is a little bit, it sort of pushes back on the completely blocked income idea. Not with respect to the payments that are at issue. And in tax law form matters, the payments that the IRS is trying to attribute are royalty payments that the party stipulated could not be made. The IRS is saying you could have exercised control to do something else that would have satisfied us. That's not what First Security was talking about. And finally, if I could just say one thing about the APA issue, I think there's a very close parallel with Ohio versus EPA. The agency is saying we have a general principle, arm's length, we're going to apply it to a context that we think is different, notwithstanding objections, and it didn't explain why. That's the same thing Ohio said was insufficient. So you didn't understand correctly a moment ago that even if we were to side with 3M on the APA argument, we still have to address the statute. I think you could, you don't have to address the statute because the blocked income regulation, which is the sole basis below, would be gone. But if you address the statutory issue, then that issue would be foreclosed for the IRS in this case and future cases. That's right. Well, why would we address the substantive issue? We encourage you to address the substantive issue. Our frontline argument is that this allocation is legally invalid. Our alternative argument is that the rule they've issued to codify their view of the statute is independently invalid under the substance. So if you concluded that for whatever reason you upheld the agency's exercise of its authority as a substantive matter, you'd still have to reach the APA. But if you rule for us on the statutory question, then the APA issue falls out. Well, you know, judges have a tendency to look for the easy way out. So I'm just wondering if the APA procedure is found to have been inadequate, wouldn't that just end the case? That would so long as it's clear that the IRS then can't revive the arguments that it's suggesting now on the substance. I think that's the one thing to be wary of. The IRS suggested, well, if the blocked income rule disappears, then it's open to us to try again in this very case under their new alternative argument under the second sentence. So I think if the Court's going to rule on the APA, it should make clear that that avenue isn't open. And if you thought procedurally that would be otherwise open to them, then you should address the statute, address the commensurate with income provision, and reject their interpretation. Just one quick follow-up. Doesn't that require us, though, I mean, on this exact point, doesn't that require us to hold that the statutory argument is waived? Because if the statutory argument isn't waived, don't we have to reach that alternative argument? Because they wouldn't be able to rely on the regulation at that point. I think you could conclude, as you did in your opinion for the Court in Red River Valley footnote one, that an agency can't argue in court the opposite of what it has said previously. And that's what happened here. The IRS for a decade said the statute, in their view, is silent. We disagree because of first security. But they said, again, page 88 of their opening brief below, after pointing to the second sentence, they said the statute nowhere addresses this issue. So I think it's no longer open to them to rely on that statutory authorization as a basis for their action. But I think if you conclude that that issue is before you, then we have no problem with the courts addressing it and just rejecting it on the merits because the statute doesn't say what they needed to say. If the Court has no further questions, we ask that you reverse.  Thank you, counsel. Thank you very much for your arguments. They've been very helpful. The case is submitted and we will try to reach a decision as soon as possible. And, counsel, you may stand aside.